LARA C. DE LEON (SBN 270252)
ldeleon@constangy.com
**CONSTANGY, BROOKS,**
**SMITH & PROPHETE, LLP**
2020 Main St., Suite 1200
Irvine, California 92614
Telephone: (949) 743-3979
Facsimile: (949) 743-3934

KOMAL JAIN (SBN 309827)
kjain@constangy.com
**CONSTANGY, BROOKS, SMITH**
**& PROPHETE, LLP**
550 West C Street, Suite 1400
San Diego, California 92101
Telephone: (619) 605-6171

Attorneys for Defendant
OUTFRONT MEDIA LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| MARCOS AREVALO, an individual, on behalf of himself and all others similarly situated,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>OUTFRONT MEDIA LLC, a Delaware Limited Liability Company; and DOES 1 through 100, inclusive,<br><br>　　　　Defendant. | Case No.:  2:26-CV-01682<br><br>[*Removed from Los Angeles County Superior Court Case No. 25STCV38794*]<br><br>**DEFENDANT OUTFRONT MEDIA LLC'S NOTICE OF REMOVAL OF ACTION FROM STATE COURT PURSUANT TO 28 U.S.C. §§ 1332(a), 1332(d)(2), 1441(b), AND 1446(b)**<br><br>＿＿＿＿<br>Complaint filed: December 31, 2025<br>Date Removed: February 17, 2026<br>＿＿＿＿ |

1

DEFENDANT'S NOTICE OF REMOVAL

**TO THE UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA, PLAINTIFF MARCOS AREVALO, AND HIS ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that Defendant OUTFRONT MEDIA LLC ("Defendant") removes this action (the "Action") from the Superior Court of California, County of Los Angeles to the United States District Court for the Central District of California – Western Division pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.

**I.      STATEMENT OF JURISDICTION**

1.      First, this Court has original jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2), because (a) this is a class action with more than 100 putative class members; (b) the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs; and (c) at least one member of the putative class is a citizen of a state different from Defendant.

2.      Second, and in the alternative, this Court has original jurisdiction under 28 U.S.C. § 1332(a) because (a) the amount in controversy for Plaintiff's individual claims exceeds $75,000, exclusive of interest and costs; and (b) this matter is between citizens of different states within the meaning of that provision.

**II.     PROCEDURAL AND VENUE MATTERS**

      **A.      Pleadings, Process, and Orders**

3.      On December 31, 2025, Plaintiff Marcos Arevalo ("Plaintiff") filed a putative Class Action Complaint (the "Complaint") against Defendant Outfront Media LLC in the Superior Court of the State of California for the County of Los Angeles, styled as *Marcos Arevalo, as an individual and on behalf of all others similarly situated v. Outfront Media LLC, a Delaware limited liability company; and Does 1 through 50, inclusive*, Case No. 25STCV38794. A true and correct copy of the Summons and Complaint is attached to the Declaration of Lara C. de Leon ("de Leon Decl.") as **Exhibit A**.

DEFENDANT'S NOTICE OF REMOVAL

4. The Complaint alleges seven causes of action: (1) failure to pay overtime wages in violation of California Labor Code §§ 510, 1194, and 1198; (2) failure to pay minimum wages in violation of California Labor Code §§ 1194, 1197, and 1197.1; (3) failure to provide meal periods in violation of California Labor Code §§ 226.7 and 512; (4) failure to reimburse necessary business expenditures in violation of California Labor Code § 2802; (5) failure to provide accurate wage statements in violation of California Labor Code § 226; (6) failure to pay wages due upon separation of employment in violation of California Labor Code §§ 201–203; and (7) unfair competition in violation of California Business & Professions Code § 17200 *et seq.* The Complaint seeks damages in the form of compensatory damages, statutory penalties, restitution, prejudgment interest, attorneys' fees, and costs. *See* Complaint, Prayer for Relief ¶¶ 4-13.

5. On January 8, 2026, Plaintiff filed the Summons and Civil Case Cover Sheet. *See* de Leon Decl. ¶¶ 2-3 and Exhibit A thereto.

6. Service of the Summons and Complaint upon Defendant was made on January 15, 2026. *See id.* ¶ 4.

7. On January 15, 2026, the Court issued an Initial Status Conference Order and Minute Order. True and Correct copies of the Initial Status Conference Order and Minute Order are attached to the de Leon Decl. as **Exhibits B and C,** respectively.

8. On January 20, 2026, Plaintiff filed and served Defendant with a Notice of Ruling. A true and correct copy of Notice of Ruling is attached to the de Leon Decl. as **Exhibit D**.

9. On February 3, 2026, Defendant filed a Notice of Appearance and a Notice of Paying Complex Fees, per the Court's Notice of Ruling/Minute Order. True and correct copies of the Notice of Appearance and Notice of Paying Complex Fees are attached to the de Leon Decl. as **Exhibits E and F,** respectively.

10. On February 9, 2026, Plaintiff filed a Proof of Service of Summons. A true and correct copy of the Proof of Service of Summons is attached to the de Leon Decl., as **Exhibit G.**

3

DEFENDANT'S NOTICE OF REMOVAL

11.    On February 17, 2026, Defendant filed its Answer and Affirmative Defenses with the state court.  A true and correct copy of Defendant's Answer is attached hereto as **Exhibit H.**

12.    Pursuant to 28 U.S.C. §1446(a), true and correct copies of all process, pleadings, and orders served upon Defendant in this action, are attached to the de Leon Decl. as Exs. A-G.  *See* de Leon Decl. ¶ 12.

13.    No further proceedings have occurred in the matter now pending before the Los Angeles County Superior Court. *See* de Leon Decl. ¶ 13.

14.    **Removal Is Timely**. This Notice of Removal is timely under 28 U.S.C. § 1446(b) because it is filed within 30 days after Defendant was served with a copy of the Summons and Complaint. Defendant was served on January 15, 2026, making the removal deadline February 14, 2026, a Saturday. As Monday February 16, 2026 was a court holiday, this Notice is thus timely filed on February 17, 2026.

15.    **Consent to Removal**. Defendant Outfront Media LLC is the sole named defendant in this Action. Although Plaintiff has also named fictitious defendants "DOES 1 through 50," no Doe defendant has been served, and therefore no Doe defendant's consent to removal is required. *See* 28 U.S.C. § 1446(b)(2)(A); *Destfino v. Reiswig*, 630 F.3d 952, 956–57 (9th Cir. 2011). Accordingly, Defendant is the only defendant required to join in this removal.

16.    **Venue**. This Action was filed in the Superior Court of the State of California for the County of Los Angeles. Venue properly lies in the United States District Court for the Central District of California – Western Division pursuant to 28 U.S.C. §§ 1391(a) and 1441(a) because this is the judicial district and division where the state court action was brought and is pending.

17.    **Notice to State Court**. Defendant will, pursuant to 28 U.S.C. § 1446(d), promptly provide written notice of the Notice of Removal's filing to the Clerk of the Los Angeles County Superior Court and Plaintiff.

DEFENDANT'S NOTICE OF REMOVAL

## III.   CAFA JURISDICTION

18.   **Basis of Original Jurisdiction**. This Court has original jurisdiction over this Action pursuant to the Class Action Fairness Act ("CAFA"). 28 U.S.C. § 1332(d)(2) and (5) provide that a district court shall have original jurisdiction over a class action with one hundred (100) or more putative class members in which the matter in controversy, in the aggregate, exceeds $5,000,000. Section 1332(d)(2) further provides that any member of the putative class must be a citizen of a state different from any defendant. As set forth below, all three CAFA requirements are satisfied.

19.   **Plausible allegations.** A defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold. Evidence establishing the amount is required only when the plaintiff contests, or the court questions, the defendant's allegation. *Dart Cherokee Basin Operating Co., LLC v. Owens¸* 574 U.S. 81, 88 (2014). *Academy of Country Music v. Continental Casualty Company*, 991 F. 3d 1059, 1068 (9th Cir. 2021); *Arias v. Residence Inn by Marriott*, 936 F. 3d 920, 922 (9th Cir. 2019). *See also Carolina Cas. Co. v. Team Equipment Inc.*, 741 F. 3d 1082, 1087–88 (9th Cir. 2014). As noted in *Dart Cherokee*: "'[D]efendants do not need to prove to a legal certainty that the amount in controversy requirement has been met. Rather, defendants may simply allege or assert that the jurisdictional threshold has been met. Discovery may be taken with regard to that question. In case of a dispute, the district court must make findings of jurisdictional fact to which the preponderance standard applies.'" *Id.* (quoting House Judiciary Committee Report on the Federal Courts Jurisdiction and Venue Clarification Act of 2011, H.R. Rep. No. 112–10, p. 16 (2011)).

### A.   Requirement No. 1: Minimal Diversity of Citizenship

20.   CAFA's diversity requirement is satisfied when *any* member of a class of plaintiffs is a citizen of a state different from any defendant. 28 U.S.C. § 1332(d)(2) (emphasis added). A party's allegation of minimal diversity may be based on "information and belief." *Ehrman v. Cox Commc'ns*, 932 F.3d 1223, 1227 (9th Cir. 2019) (quoting *Dart Cherokee*, 574 U.S. at 84).

DEFENDANT'S NOTICE OF REMOVAL

21.    **Plaintiff's Citizenship.** For diversity purposes, a person is a "citizen" of the state in which he or she is domiciled. *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983). The Complaint alleges that "[a]t all relevant times herein, Plaintiff was and currently is, a California resident." *See* Complaint ¶ 3. As such, Defendant is informed and believes that Plaintiff, at the time of the filing of the Action, was, and still is, a citizen of California.

22.    **Citizenship of Outfront Media LLC**. For diversity purposes, a limited liability company ("LLC") takes the citizenship of each of its members. *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006); *see also NewGen, LLC v. Safe Civ, LLC*, 840 F.3d 606, 612 (9th Cir. 2016) ("[a] limited liability company is a citizen of every state of which its owners/members are citizens, not the state in which it was formed or does business.") Outfront Media LLC is a Delaware limited liability corporation whose sole member is Outfront Media Inc., a Delaware corporation with its principal place of business in New York, New York.  *See* Declaration of Patricia Engracia ("Engracia Decl.") at ¶ 3.  Pursuant to 28 U.S.C. § 1332(c), a corporation is a citizen of its state of incorporation and the state where it has its principal place of business.

23.    The United States Supreme Court has concluded that a corporation's "principal place of business" is "where a corporation's officers direct, control, and coordinate the corporation's activities," or its "nerve center." *Hertz Corp. v. Friend*, 559 U.S. 77, 92–93 (2010). Accordingly, for purposes of diversity jurisdiction, Outfront Media, LLC is a citizen of the States of Delaware and New York. Engracia Decl. ¶¶ 3-4.

24.    Outfront Media Inc.'s principal place of business is in New York, New York, where its executive, administrative, and financial offices are located. Specifically, the vast majority of Outfront Media, Inc.'s corporate decisions – including operational, executive, administrative, and policymaking decisions – are made at its New York, New York headquarters. *See* Engracia Decl. ¶4.

25.    Accordingly, Defendant Outfront Media is a citizen of New York.

DEFENDANT'S NOTICE OF REMOVAL

26.    **Doe Defendants Should Be Disregarded.** Plaintiff's Complaint names as Defendants "Does 1 to 100." Pursuant to 28 U.S.C. § 1441(b)(1), "[i]n determining whether a civil action is removable on the basis of the jurisdiction under section 1332(a) of this title, the citizenship of defendants sued under fictitious names shall be disregarded." *See also Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1213 (9th Cir. 1980).

27.    **Minimal Diversity is Satisfied.** Plaintiff, a member of the putative class, is a citizen of California, and Outfront Media LLC is not a citizen of California. *See* 28 U.S.C. § 1332(d)(2).

**B.    Requirement No. 2: Size of the Putative Class Exceeds 100 Members**

28.    CAFA provides that district courts shall not have jurisdiction over class actions where "the number of members of all proposed plaintiff classes in the aggregate is less than 100." 28 U.S.C. § 1332(d)(5). Plaintiff alleges and seeks to represent a class of "all current and former non-exempt employees who worked for Defendant in California at any time during the period from four (4) years preceding the filing of this action to the present." *See* Complaint ¶ 14.

29.    Four years prior to Plaintiff's filing of the Complaint is approximately December 31, 2021. During this time period, Defendant employed at least 279 individuals as non-exempt employees in the State of California. *See* Declaration of Djuna Duronslet ("Duronslet Decl.") ¶ 5. Therefore, per the Complaint's allegations, the putative class exceeds 100 members.

**C.    Requirement No. 3: The Aggregate Amount in Controversy Exceeds $5,000,000[1]**

---

[1]    This Notice does not concede and should not be construed as evidence that Defendant violated the legal rights of Plaintiff or any putative class members. The argument and the calculations of potential damages presented here are based on the allegations in the Complaint and solely for purposes of this Notice. Defendant expressly reserves and does not waive its right to amend this Notice of Removal and/or offer evidence as to additional and/or different amounts in controversy on any or all of Plaintiff's causes of action alleged in the Complaint.

DEFENDANT'S NOTICE OF REMOVAL

30. Removal is appropriate when it is more likely than not that the amount in controversy exceeds the jurisdictional requirement. *Cohn v. PetSmart, Inc.*, 281 F.3d 837, 839–40 (9th Cir. 2002). The Court must presume Plaintiff will prevail on each and every one of his claims. *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002).

31. Plaintiff does not specifically allege any amount of damages in the Complaint, nor does he allege that the aggregate amount in controversy is less than $5,000,000. Therefore, Defendant "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee*, 574 U.S. at 84.

32. Plaintiff's Complaint pleads causes of action for: (1) failure to pay overtime wages; (2) failure to pay minimum wages; (3) failure to provide meal periods; (4) failure to reimburse necessary business expenditures; (5) failure to provide accurate wage statements; (6) failure to pay wages due; and (7) unfair competition. *See generally* Complaint.

33. Plaintiff's Seventh Cause of Action alleging unfair competition in violation of the UCL purports to seek restitution for each of the underlying Labor Code violations, which "occurred within the last four years immediately preceding the filing [of] this action." *See* Complaint ¶¶ 52–56. The UCL's four-year statute of limitations applies to claims seeking restitution of wages unlawfully withheld. *See Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163, 178–79 (2000); *Pineda v. Bank of Am.*, N.A., 50 Cal. 4th 1389, 1398–99 (2010). Because the Complaint seeks restitution of the same wages at issue in the underlying Labor Code claims, the four-year period applies to the overtime, minimum wage, meal period, and reimbursement claims. The workweek and employee-month totals below are calculated accordingly.

34. Without conceding that Plaintiff or the putative class members are entitled to or could recover damages in the amount or manner alleged, or at all, the amount in controversy in this putative class action conservatively exceeds $5,000,000, exclusive of interest and costs. Defendant's employment records reflect that, during the relevant class

DEFENDANT'S NOTICE OF REMOVAL

period, at least 279 putative class members worked a total of approximately 30,625 workweeks. The average hourly rate of pay among this group is approximately $31.47. *See* Duronslet Decl. ¶¶ 5-6.

### 1. Overtime Violations (Plaintiff's First Cause of Action)

35. Plaintiff alleges that Defendant "caus[ed] Plaintiff…and other non-exempt employees to be underpaid all their required overtime wages" at the required premium rate because Defendant failed to include all forms of remuneration, such as "'Restricted Stock Vest' pay and/or 'Restricted Stock Dividend'" in the regular rate of pay. *See* Compl. ¶ 11. Assuming conservatively that non-discretionary incentive pay averaged approximately 8% of the base hourly wages, based on Defendant's payroll and compensation records/incentive plan summaries, and applying the overtime differential (0.5 times the incentive component) across 5 overtime hours per week, the amount in controversy for this claim is at least $72,284 (calculated as: 5 OT hours/week × 0.5 × ($31.47 × 3%) × 30,625 workweeks).

### 2. Minimum Wage Violations (Alleged Rounding Underpayment) (Plaintiff's Second Cause of Action)

36. Plaintiff alleges that Defendant's timekeeping practices, including rounding of clock-in and clock-out times, resulted in systematic underpayment of wages. *See* Complaint ¶ 12. Assuming a net rounding loss of 10 minutes per workday, the amount in controversy for this claim is at least $843,309 (calculated as: (10 min ÷ 60) × 5 days/week × $31.47/hour × 30,625 workweeks × 1.05 adjustment for compounding).

### 3. Meal Period Violations (Plaintiff's Third Cause of Action)

37. Plaintiff alleges that Defendant "as a ***policy and/or practice***, required Plaintiff…and other non-exempt employees to perform a large volume of assignments under time deadlines in a single day…such that it was often impossible…to stop working and take a…duty-free meal break before their fifth hour of work." *See* Complaint ¶ 13 (emphasis added). The Complaint further states that Defendant "failed to provide Plaintiff and….other non-exempt employees wan uninterrupted 30 minute off-duty meal period

DEFENDANT'S NOTICE OF REMOVAL

before the end of their fifth hour of work in each shift." *See* Complaint ¶ 13. Under Cal. Labor Code § 226.7, an employee is entitled to one additional hour of pay at the employee's regular rate for each workday on which a compliant meal period is not provided. Assuming a violation rate of one meal period violation per workweek—a conservative assumption given Plaintiff's unqualified allegations of systematic "policy and/or practice"—the amount in controversy for this claim is at least **$1,185,452** (calculated as: 1 violation/week × $31.47 average hourly rate × 30,625 workweeks × 1.23 regular rate adjustment). The 1.23 regular rate adjustment accounts for non-hourly compensation that must be included in the premium rate under California law.

38.     Given the Complaint's sweeping allegations, the above assumptions are very conservative because Plaintiff's unqualified allegations of "policy and/or practice" of failing to provide meal periods reasonably justify a violation rate of at least 25%. *See Avila v. Rue21, Inc.*, 432 F. Supp. 3d 1175, 1189 (E.D. Cal. 2020) (courts have found violation rates of 25% to 60% reasonable based on pattern and practice allegations); *Bryant v. NCR Corp.*, 284 F. Supp. 3d 1147, 1151 (S.D. Cal. 2018) (finding 60% meal break violation rate reasonable). *Alvarez v. Office Depot, Inc.*, 2017 WL 5952181, at *3 (C.D. Cal. 2017); *see also Mejia v. DHL Express (USA), Inc.*, 2015 WL 2452755, at *4 (C.D. Cal. May 21, 2015) (finding allegations of "uniform policies, practices and procedures" allowed for a 100% violation rate). Indeed, it is reasonable for Defendant to assume a 100% violation rate with respect to Plaintiff's meal period violations because such an assumption is grounded in Plaintiff's own unequivocal allegations that, due to Defendant's policies and practices, the allotted time for meal periods failed to comply with California law—which arguably applies to each and every workweek.

### 4.     Business Expense Reimbursement (Plaintiff's Fourth Cause of Action)

39.     Plaintiff alleges that "Plaintiff…and other non-exempt employees generally worked from home at least approximately two days per workweek, during which time Defendants required Plaintiff…and other non-exempt employees to use their home

DEFENDANT'S NOTICE OF REMOVAL

internet…[and] personal cell phones to perform their job duties, including to communicate with management…clients…and to punch-in and punch out daily…Defendant did not reasonably reimburse…for such necessary work expenditures…" *See* Complaint ¶ 14. Assuming conservatively that unreimbursed cell phone and internet expenses averaged $50 per month per employee, the amount in controversy for this claim is at least $352,150 (calculated as: $50/month × approximately 7,043 total employee-months during the class period).

### 5.    Wage Statement Penalties (Plaintiff's Fifth Cause of Action)

40.    Plaintiff alleges that Defendant "as a matter of uniform policy and/or practice failed to furnish…accurate and complete itemized wage statements…" in violation of Labor Code § 226. *See* Complaint ¶ 45.

41.    Under Labor Code § 226(e), an employee is entitled to the greater of actual damages or $50 for the initial pay period and $100 for each subsequent violation, not to exceed $4,000 per employee. This type of claimed violation is normally subject to a one-year statute of limitations.

42.    Plaintiff's wage statement claim is derivative of the underlying wage violations, and thus a 100% violation rate is properly assumed. *See Rapisura v. BMW of N. Am., LLC*, 2022 WL 1557001, at *5 (E.D. Cal. May 17, 2022) ("It is reasonable for [the employer] to assume that [p]laintiff and all [PCMs] received inaccurate wage statements because the complaint draws no distinctions between the [PCMs] and [p]laintiff alleges that they are 'each entitled to recover' for the wage statement claim." (emphasis in original)); *Nunes v. Home Depot U.S.A., Inc.*, 2019 WL 4316903, at *3 (E.D. Cal. Sept. 12, 2019) (using 100% where defendant was alleged to have "failed to provide an accurate statement not just as to missed . . . breaks, but as to 'all the requirements under Labor Code § 226'"); *Salcido v. Evolution Fresh, Inc.*, 2016 WL 79381, at *7 (C.D. Cal. Jan. 6, 2016) (100% rate "followed logically" from allegations of failure to accurately itemize all hours worked); *see also Ramirez v. Carefusion Res., LLC*, 2019 WL 2897902, at *4 (S.D. Cal.

DEFENDANT'S NOTICE OF REMOVAL

July 5, 2019); *Archuleta v. Avcorp Composite Fabrication, Inc.*, 2018 WL 6382049, at *6 (C.D. Cal. Dec. 6, 2018).

43.     During the one-year statutory period (starting from December 31, 2024 to the present), Outfront Media employed approximately 191 putative class members. *See* Duronslet Decl. ¶ 11. Applying the statutory maximum of $4,000 per employee, the amount in controversy for this claim is at least $764,000 (calculated as: 191 employees × $4,000 per employee).

### 6.     Waiting Time Penalties (Plaintiff's Sixth Cause of Action)

44.     In support of the Sixth Cause of Action, Plaintiff alleges that Defendant "failed to timely pay Plaintiff and members of the Waiting Time Penalty class all final wages due to them at the time of separation, which includes, among other things, unpaid wages, unpaid overtime wages, and unpaid meal premium…as a matter of uniform policy and practice…". *See* Complaint ¶ 50. *See* Cal. Lab. Code § 203.

45.     Defendant's records reflect that approximately 105 employees separated from employment during the three-year statutory period. *See* Duronslet Decl. ¶ 9. The average daily rate of pay for separated employees is approximately $232.46 (based on an average hourly rate of $29.06 × 8 hours). *See* Duronslet Decl. ¶ 10.

46.     Assuming 30 days of waiting time penalties per separated employee, the amount in controversy for this claim is at least **$732,249** (calculated as: 105 separated employees × $232.46/day × 30 days).

### 7.     Statutory Attorneys' Fees

47.     Plaintiff also seeks statutory attorneys' fees under various provisions of the California Labor Code and under Cal. Civ. Proc. Code § 1021.5 in connection with the causes of action alleged in the Complaint. *See* Complaint, Prayer for Relief, 4-12. Plaintiff expressly seeks attorneys' fees in connection with his overtime, meal period, reimbursement, wage statement, and waiting time claims, and Cal. Civ. Proc. Code § 1021.5 "provides for attorney's fees in a broad range of actions . . . as [a] 'private attorney general statute.'" *Perez v. Safety-Kleen Sys., Inc.*, 448 F. App'x 707, 708 (9th Cir. 2011).

DEFENDANT'S NOTICE OF REMOVAL

48.   In the Ninth Circuit, when attorneys' fees are authorized by statute, they are appropriately part of the calculation of the "amount in controversy" for purposes of removal. *See Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 794 (9th Cir. 2018); *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005); *see also Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155–56 (9th Cir. 1998) ("[W]here an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy."). Moreover, "a court must include future attorneys' fees recoverable by statute or contract when assessing whether the amount-in-controversy requirement is met." *Fritsch*, 899 F.3d at 794 (emphasis added); *see also Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 414–15 (9th Cir. 2018) ("[T]he amount in controversy is determined by the complaint operative at the time of removal and encompasses all relief a court may grant on that complaint if the plaintiff is victorious." (emphasis added)).

49.   Where, as here, a common fund recovery is sought, the Ninth Circuit uses a benchmark rate of 25% of the total potential award as an estimate for attorneys' fees. *See In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 570 (9th Cir. 2019) (applying 25% benchmark); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) ("This circuit has established 25% . . . as a benchmark award for attorney fees."); *see also Staton v. Boeing Co.*, 327 F.3d 938, 967 (9th Cir. 2003); *Glass v. UBS Fin. Servs.*, 331 F. App'x 452, 457 (9th Cir. 2009) (finding 25% of total award "was proper, and in line with Ninth Circuit precedent"); *Hamilton v. Wal-Mart Stores Inc.*, 2017 WL 4355903, at *5–6 (C.D. Cal. Sept. 29, 2017) (CAFA wage and hour case using an estimated fee award of 25%); *Fong v. Regis Corp.*, 2014 WL 26996, at *7 (N.D. Cal. Jan. 2, 2014).

50.   Applying the 25% benchmark to Defendant's calculation of the amount in controversy on each of Plaintiff's causes of action, Defendant conservatively estimates the amount in controversy attributable to statutory attorneys' fees to be at least **$1,113,992** (25% × $4,455,967 subtotal).

DEFENDANT'S NOTICE OF REMOVAL

51.    In the alternative to any percentage-of-recovery estimate, attorneys' fees may be conservatively estimated using a lodestar approach. *Hanlon,* 150 F.3d at 1029; *Ramirez v. Benihana Nat'l Corp.*, No. 18-cv-05575-MMC, at 3 (N.D. Cal. Jan. 8, 2019). Here, a wage-and-hour putative class action of this scope necessarily entails, at a minimum, pre-suit investigation and pleading, initial disclosures, written discovery, payroll/timekeeping analysis, depositions, mediation preparation, class certification briefing, and associated motion practice. Using a conservative estimate of 200 hours through class certification and mediation and applying a conservative blended rate of $450 per hour, the lodestar fees in controversy are at least $90,000 (200 hours × $450/hour). This conservative blended rate is well below the $625/hour rate reflected for Plaintiff's counsel, Sam Sani, in *Gutierrez v. M. Argueso & Co., Inc.*, No. 22STCV24456 (L.A. Super. Ct. Aug. 1, 2024) (final approval order listing Sam Sani at $625/hour). In addition, it reflects only the work through certification/mediation rather than through summary judgment and trial. Accordingly, attorneys' fees at issue further support that the aggregate amount in controversy exceeds $5,000,000.

### 8.    Prejudgment Interest

52.    Plaintiff's Prayer for Relief expressly seeks "pre-judgment interest on all due and unpaid wages..." *See* Complaint, Prayer for Relief. Prejudgment interest on unpaid wages accrues at 10% per annum under California Civil Code § 3289(b). *See also* Cal. Lab. Code § 218.6. Applying the statutory rate to the underlying wage claims (overtime, minimum wage, meal period premiums, and unreimbursed expenses), and assuming an average of 1.5 years between accrual and resolution, the amount in controversy attributable to prejudgment interest is at least **$386,050**.

### 9.    Summary of Amount in Controversy Under CAFA

53.    Based on the foregoing, the aggregate amount in controversy is not less than $**5,329,014** which exceeds the CAFA jurisdictional threshold:

DEFENDANT'S NOTICE OF REMOVAL

| Cause of Action / Claim | SOL Period | Amount in Controversy |
|---|---|---|
| Overtime Violations (First COA) | 4-yr (UCL) | $72,284 |
| Minimum Wage Violations (Second COA) | 4-yr (UCL) | $843,309 |
| Meal Period Violations (Third COA) | 4-yr (UCL) | $1,185,452 |
| Business Expense Reimbursement (Fourth COA) | 4-yr (UCL) | $352,150 |
| Wage Statement Penalties (Fifth COA) | 1-yr | $764,000 |
| Waiting Time Penalties (Sixth COA) | 3-yr | $732,249 |
| Prejudgment Interest | N/A | $367,424 |
| Statutory Attorneys' Fees (25% benchmark) | N/A | $1,079,356 |
| **Total:** | | **$5,396,780** |

54. This amount in controversy satisfies the standard for removal. *Dart Cherokee*, 574 U.S. at 81 ("[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold; the notice need not contain evidentiary submissions."). Accordingly, removal of this action is proper under CAFA.

## IV.    INDIVIDUAL DIVERSITY JURISDICTION (ALTERNATIVE BASIS)

55. In addition to, and independent of, CAFA jurisdiction, this Court also has original jurisdiction over this Action under 28 U.S.C. § 1332(a). Under Section 1332(a), federal courts have original jurisdiction of "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different states." Both requirements are satisfied here because diversity of citizenship exists between Plaintiff and Defendant, and Plaintiff's contentions place a sum in excess of $75,000 in controversy, exclusive of interest and costs.

15

DEFENDANT'S NOTICE OF REMOVAL

**A.**     **<u>Requirement No. 1: Plaintiff is a Citizen of a Different State than Defendants.</u>**

56.     **<u>Plaintiff is a Citizen of California</u>**.   As set forth above in Paragraph 20, Plaintiff is domiciled in California and is therefore a citizen of California for diversity purposes.

57.     **<u>Defendant is Not a Citizen of California</u>**.   As set forth above in Paragraphs 21 to 26, Outfront Media LLC is a Delaware limited liability company whose sole member, Outfront Media Inc., is incorporated in Delaware with its principal place of business in New York. Accordingly, Outfront Media LLC is not a citizen of California, and complete diversity exists.

**B.**     **<u>Requirement No. 2: The Amount in Controversy Exceeds $75,000</u>**.

58.     Section 1332(a) provides that "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different states. . .."

59.     While Defendant denies any liability to Plaintiff whatsoever, the amount placed in controversy by Plaintiff's individual claims exceeds $75,000. If a plaintiff's state court complaint is silent as to the amount of damages claimed, the removing defendant need only establish it is more probable than not that the plaintiff's claim exceeds the jurisdictional minimum. *Sanchez v. Monumental Life Ins. Co.* 95 F.3d 856, 860-861 (9th Cir. 1996), *amended by, rehearing en banc denied by*, 102 F.3d 398, 404 (9th Cir. 1996). Moreover, all claims can be aggregated to meet the minimum jurisdictional amount, and such fees are calculable beyond the time of removal. *See Simmons v. PCR Tech*. 209 F. Supp. 2d 1029, 1035 (N.D. Cal. 2002).

60.     The calculation of the amount in controversy hinges on the factual allegations in the complaint, along with the types of damages plaintiff seeks, not what a defendant will actually owe. *See Rippee v. Boston Market Corp.,* 408 F. Supp. 2d 982, 984-986 (S.D. Cal. 2005). "In measuring the amount in controversy, 'a court must assume that the allegations of the complaint are true and assume that a jury will return a verdict for the plaintiff on all

DEFENDANT'S NOTICE OF REMOVAL

claims made in the complaint.'" *Korn v. Polo Ralph Lauren Corp.,* 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008). The "amount in controversy" inquiry includes potential general and special damages, punitive damages, and penalties, as well as attorney's fees if recoverable by statute or contract. *Richmond v. Allstate Ins. Co.* 897 F. Supp. 447, 449-450 (S.D. Cal. 1995); *Simmons v. PCR Tech.* 209 F. Supp. 2d 1029, 1032-1034 (N.D. Cal. 2002).

61.     **Economic Damages.** The court evaluates the amount in controversy at the time of removal. *Fritsch v. Swift Transportation*, 899 F. 3d 785, 791 (9th Cir. 2018).

62.     Here, Plaintiff's Complaint does not demand a specific dollar amount, but the Plaintiff was employed by Defendant as a Sales Coordinator from approximately November 2022 through October 10, 2025 (approximately 154 weeks), at an hourly rate of $29.17 per his wage statements. Not counting overtime earned and/or worked, this equates to an annual salary of approximately $60,673.60 per year ($29.17 per hour × 40 hours per week × 52 weeks per year).

### 1.     Overtime Violations (Plaintiff's First Cause of Action)

63.     Plaintiff's wage statements reflect that he received Restricted Stock Unit ("RSU") vesting compensation and RSU dividends totaling $1,550.94 during his employment—$327.12 in 2024 and $1,223.82 in 2025. *See* Duronslet Decl. ¶ 14. During the periods in which RSU compensation was paid, Plaintiff worked 546.67 overtime (1.5×) hours and 9.75 double-time hours in 2024, and 514.43 overtime (1.5×) hours and 10.75 double-time hours in 2025. *See* Duronslet Decl. ¶ 15. Allocating the RSU compensation across all hours worked in each respective year and applying the overtime premium differential, the amount in controversy for this claim is at least $175.40 (calculated as: 2024—$327.12 RSU ÷ 2,639.42 total hours = $0.1239/hr; 546.67 OT1.5 hrs × 0.5 × $0.1239 + 9.75 DT hrs × $0.1239 = $35.08; 2025—$1,223.82 RSU ÷ 2,337.18 total hours = $0.5236/hr; 514.43 OT1.5 hrs × 0.5 × $0.5236 + 10.75 DT hrs × $0.5236 = $140.31; total = $175.40). *See id*.

### 2.     Minimum Wage Violations (Alleged Rounding Underpayment) (Plaintiff's Second Cause of Action)

DEFENDANT'S NOTICE OF REMOVAL

64. Assuming conservatively a net rounding loss of 10 minutes per workday across a five-day workweek during Plaintiff's approximate 154 workweeks of employment, the amount in controversy for this claim is at least $3,930.66 (calculated as: $(10 \text{ min} \div 60) \times 5$ days/week $\times$ $29.17/hour $\times$ 154 workweeks $\times$ 1.05 adjustment for compounding).

### 3. Meal Period Violations (Plaintiff's Third Cause of Action)

65. Assuming a violation rate of one meal period violation per workweek—a conservative assumption given Plaintiff's unqualified allegations of a systematic "policy and/or practice"—the amount in controversy for this claim is at least $5,525.38 (calculated as: 1 violation/week $\times$ $29.17 hourly rate $\times$ 154 workweeks $\times$ 1.23 regular rate adjustment). The 1.23 regular rate adjustment accounts for non-hourly compensation that must be included in the premium rate under California law.

### 4. Business Expense Reimbursement (Plaintiff's Fourth Cause of Action)

66. Assuming conservatively that Plaintiff's unreimbursed cell phone and internet expenses averaged $50 per month, the amount in controversy for this claim is at least $1,750 (calculated as: $50/month $\times$ approximately 35 months from approximately November 2022 through October 10, 2025).

### 5. Wage Statement Penalties (Plaintiff's Fifth Cause of Action)

67. Applying the statutory maximum of $4,000, the amount in controversy for this claim is $4,000.

### 6. Waiting Time Penalties (Plaintiff's Sixth Cause of Action)

68. Assuming 30 days of waiting time penalties, the amount in controversy for this claim is at least $7,000.80 (calculated as: $29.17/hour $\times$ 8 hours/day = $233.36/day; $233.36/day $\times$ 30 days = $7,000.80).

69. **Attorneys' Fees.** Plaintiff also seeks attorneys' fees. *See* Complaint, Prayer ¶ 12. As set forth above in Paragraphs 43 to 46, recoverable attorneys' fees at issue under the applicable fee-shifting statutes are included in the amount in controversy. Plaintiff's

DEFENDANT'S NOTICE OF REMOVAL

claims authorize fee-shifting, including Labor Code sections 1194 (overtime and minimum wages), 2802 (expense reimbursement), and 226 (wage statements).

70. Courts also look to reasonable hourly rates in the relevant market when estimating fees in controversy. In *Gutierrez v. M. Argueso & Co., Inc.*, the Los Angeles Superior Court's final approval order listed Plaintiff's counsel Sam Sani at an hourly rate of $625.

71. Plaintiff's estimated economic damages and statutory penalties total approximately $22,382.24, leaving only $52,617.76 needed to reach the $75,000 jurisdictional threshold. At a conservative rate of $625 per hour, Plaintiff's counsel would need to incur only approximately 84 hours of attorney time to bridge that gap (calculated as: $75,000 − $22,382.24 = $52,617.76; $52,617.76 ÷ $625 ≈ 82 hours). Given the breadth of Plaintiff's allegations and the litigation work required to prosecute Plaintiff's individual wage-and-hour claims alone, through written discovery, payroll/timekeeping analysis, depositions, motion practice, and trial preparation, it is more likely than not that recoverable attorneys' fees will exceed this conservative estimate. Accordingly, the amount in controversy exceeds $75,000.

## V. CONCLUSION

For the foregoing reasons, this Court has original jurisdiction over this Action under both CAFA, 28 U.S.C. § 1332(d), and diversity jurisdiction, 28 U.S.C. § 1332(a). CAFA jurisdiction exists because: (1) this is a putative class action with at least 279 members; (2) the aggregate amount in controversy exceeds $5,000,000; and (3) minimal diversity exists between Plaintiff (a California citizen) and Defendant (a citizen of Delaware and New York). Individual diversity jurisdiction independently exists because complete diversity is present and Plaintiff's individual claims, including statutory attorneys' fees, exceed $75,000.

/ / /

/ / /

/ / /

DEFENDANT'S NOTICE OF REMOVAL

WHEREFORE, Defendant prays that the Action be removed from the Superior Court of California, County of Los Angeles, to this Court.

DATED: February 17, 2026

CONSTANGY, BROOKS,
SMITH & PROPHETE, LLP


By: */s/ Lara C. de Leon*
LARA C. DE LEON
KOMAL JAIN
Attorneys for Defendant
OUTFRONT MEDIA LLC

DEFENDANT'S NOTICE OF REMOVAL

**CERTIFICATE OF SERVICE**

**UNITED STATES DISTRICT COURT, CENTRAL DIST. OF CALIFORNIA**

**CASE NAME:**      *Marcos Arevalo v Outfront Media LLC*

I am employed in the County of San Diego, State of California.  I am over the age of 18 and not a party to the within action; my business address is 550 West C Street, Suite 1400, San Diego, California 92101

On February 17, 2026, I served following document(s) described as:

**DEFENDANT OUTFRONT MEDIA LLC'S NOTICE OF REMOVAL OF ACTION FROM STATE COURT PURSUANT TO 28 U.S.C. §§ 1332(a), 1332(d)(2), 1441(b), AND 1446(b)**

on the parties in this action listed below in the manner designated below:
Sam Sani (SBN 273993)
SANI LAW, APC
595 E. Colorado Boulevard, Suite 522
Pasadena, California 91101
Telephone: (310) 935-0405
Facsimile:  (310) 935-0409
E-Mail: ssani@sanilawfirm.com
Osvaldo Calle:  osvaldo@sanilawfirm.com 4
Attorneys for Plaintiff
*MARCOS AREVALO*

__      **BY NOTICE OF ELECTRONIC FILING**.  The above-listed counsel have consented to electronic service and have been automatically served by the Notice of Electronic Filing, which is automatically generated by CM/ECF at the time said document was filed, and which constitutes service pursuant to FRCP 5(b)(2)(E).

 X      **BY U.S. MAIL** by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in United States mail in the State of California at San Diego, addressed as set forth above.

 X      **FEDERAL.**  I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct, and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on February 17, 2026, at San Diego, California.

Margarita Eleria-Perez

CERTIFICATE OF SERVICE